

Prepared By:
M&T Bank
475 Crosspoint Pkwy
Getzville, NY 14068

After Recording Please Return To:
ServiceLink
Attn: Loan Modification Solutions
3220 El Camino Real
Irvine, CA 92602
800-777-8759

Property Address:
5611 MOUNT PISGAH ROAD
YORK, PA 17406

UPI/PIN/Tax ID: 31-000-KL-0078.00-00000

───────────────[Space Above This Line For Recording Data]───────────────

235044
Investor Loan No: 600559785

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this **6th** day of April, 2023, between **LARRY V. HOGG AND KATRINA S. HOGG** ("Borrower") and **M&T BANK** ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") dated **April 12, 2010**, in the amount of **$73,000.00** and recorded on **June 17, 2010** in Book, Volume, or Liber No. **2079**, at Page **6894** (or as Instrument No. **2010028359**), of the **Official** (Name of Records) Records of York, **PENNSYLVANIA** (County and State, or other jurisdiction) and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at
      5611 MOUNT PISGAH ROAD, YORK, PA 17406
      (Property Address)

---

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument     Form 3179 1/01 (rev. 4/14)
The Compliance Source, Inc.     Page 1 of 10     23703PA 10/01 Rev. 10/21
©2001-2021, The Compliance Source, Inc.



*00136647776*

the real property described being set forth as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **June 1, 2023**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$100,282.98**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **5.250%**, from **May 1, 2023**. Borrower promises to make monthly payments of principal and interest of U.S. **$500.28**, beginning on the **1st** day of **June, 2023**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **5.250%** will remain in effect until principal and interest are paid in full. If on **May 1, 2063** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument  Form 3179 1/01 (rev. 4/14)
The Compliance Source, Inc.　　　　　　　　　Page 2 of 10　　　　　　　　　23703PA 10/01 Rev. 10/21
©2001-2021, The Compliance Source, Inc.



4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way



obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number,


Case 1:20-bk-01725-HWV    Doc 98    Filed 05/12/23    Entered 05/12/23 15:15:51    Desc
Main Document    Page 4 of 9

including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging ☐.

6. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument  Form 3179 1/01 (rev. 4/14)
The Compliance Source, Inc.   Page 5 of 10   23703PA 10/01 Rev. 10/21
©2001-2021, The Compliance Source, Inc.


*0013664776*

may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument Form 3179 1/01 (rev. 4/14)
The Compliance Source, Inc. Page 6 of 10 23703PA 10/01 Rev. 10/21
©2001-2021, The Compliance Source, Inc.


*001366477 6*

Case 1:20-bk-01725-HWV    Doc 98    Filed 05/12/23    Entered 05/12/23 15:15:51    Desc
Main Document    Page 6 of 9



RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

_____  Date: ___/___/___
Borrower     - LARRY V. HOGG

_____  Date: ___/___/___
Borrower     - KATRINA S. HOGG

Certificate of Residence:

I/We do hereby certify that the precise address of the within named mortgagee, assignee or person entitled to interest is **475 Crosspoint Parkway Getzville, Ny 14068, Getzville, NY 14068.**

**M&T BANK**

By: _____

Its: _____

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument  Form 3179 1/01 (rev. 4/14)
The Compliance Source, Inc.    Page 7 of 10    23703PA 10/01 Rev. 10/21
©2001-2021, The Compliance Source, Inc.

*0013664776*

EXHIBIT A

BORROWER(S): LARRY V. HOGG AND KATRINA S. HOGG

LOAN NUMBER: 0013664776

LEGAL DESCRIPTION:

STATE OF PENNSYLVANIA, COUNTY OF YORK, AND DESCRIBED AS FOLLOWS:

ALL THAT CERTAIN PIECE, PARCEL AND TRACT OF REAL ESTATE WITH THE IMPROVEMENTS THEREON ERECTED, SITUATE IN TOWNSHIP OF HELLAM ( FORMERLY LOWER WINDSOR TOWNSHIP), COUNTY OF YORK, COMMONWEALTH OF PENNSYLVANIA, MORE FULLY BOUNDED, LIMITED AND DESCRIBED AS FOLLOWS: BEGINNING AT A STONE IN THE PUBLIC ROAD LEADING FROM WRIGHTSVILLE TO YORKANNA AT LANDS NOW OR FORMERLY OF CHARLES DELLINGER; RUNNING THENCE NORTH 12° WEST 308.2 FEET TO AN IRON PIN AT LANDS NOW OR FORMERLY OF WILLIAM DELLINGER; THENCE BY LANDS NOW OR FORMERLY OF WILLIAM DELLINGER, NORTH 79° EAST 81,5 FEET TO A PIN AT LANDS NOW OR FORMERLY OF HARPER ZORBAUGH; THENCE ALONG LANDS NOW OR FORMERLY OF HARPER ZORBAUGH, SOUTH 12° EAST 308.2 FEET TO A POINT IN THE CENTER OF SAID PUBLIC ROAD LEADING FROM WRIGHTSVILLE TO YORKANNA; RUNNING THENCE IN AND ALONG SAID PUBLIC ROAD, SOUTH 79° WEST 78.5 FEET TO A POINT, THE PLACE OF BEGINNING. TOWN/CITY/VILLAGE: HELLAM TOWNSHIP COUNTY: YORK SECTION - BLOCK- LOT: 31-000-KL-0078-00

UPI/PIN/Tax ID: 31-000-KL-0078.00-00000

ALSO KNOWN AS: 5611   MOUNT PISGAH ROAD, YORK, PA 17406

---

Loan Modification Agreement—Single Family—Fannie Mae Uniform Instrument  Form 3179 1/01 (rev. 4/14)
The Compliance Source, Inc.                    Page 10 of 10                 23703PA 10/01 Rev. 10/21
                                                                  ©2001-2021, The Compliance Source, Inc.



*0013664776*

Loan No.: 0013664776

# CORRECTION AGREEMENT

Borrower(s):  LARRY V. HOGG AND KATRINA S. HOGG          Property:  5611 MOUNT PISGAH ROAD, YORK, PA 17406

Words used in this Agreement are defined below. Words in the singular mean and include the plural and vice versa.

"Borrower" is **LARRY V. HOGG AND KATRINA S. HOGG**

"Lender" is **M&T BANK**

, and its successors or assigns.
"Loan" means the debt evidenced by the Note and all sums due under the Security Instrument.
"Note" means the promissory note(s) signed by Borrower in favor of Lender or any assignee of Lender.
"Security Instrument" means the Deed of Trust/Mortgage/Security Deed, signed by Borrower in favor of Lender, securing payment of the Note.

AGREEMENT TO CORRECT OR PROVIDE ADDITIONAL DOCUMENTATION OR FEES: In consideration of the Loan Modification Agreement offered by Lender in the amount of $100,282.98, which modifies the Note and Security Instrument, and regardless of the reason for any loss, misplacement, omission, misstatement or inaccuracy in any Loan documentation, Borrower agrees as follows: If any document is lost, misplaced, omitted, misstated or inaccurately reflects the true and correct terms and conditions of the Loan, upon request of Lender (including any assignee of Lender), Borrower will comply with Lender's request to execute, acknowledge, initial and/or deliver to Lender any documentation Lender deems necessary to replace and/or correct the lost, misplaced, omitted, misstated or inaccurate document(s). All documents Lender requests of Borrower shall be referred to as "Requested Documents." Borrower agrees to deliver the Requested Documents within ten (10) days after receipt by Borrower of a written request for such replacement. Borrower does hereby agree and covenant in order to assure that the Loan documentation executed this date will enable Lender to seek insurance or guaranty from the Department of Housing and Urban Development (HUD) or Department of Veteran's Affairs (VA), if applicable, or to conform with and be acceptable to the Federal National Mortgage Association (FNMA), Federal Home Loan Mortgage Corporation (FHLMC), Government National Mortgage Association (GNMA), or any other investor.

REQUEST BY LENDER: Any request under this Agreement may be made by the Lender (including assignees and persons acting on behalf of the Lender) and shall be prima facie evidence of the necessity for same. A written statement addressed to Borrower at the address indicated in the Loan documentation shall be considered conclusive evidence of the necessity for Requested Documents.

BORROWER LIABILITY: If Borrower fails or refuses to execute, acknowledge, initial or deliver the Requested Documents to Lender within ten (10) days after being requested to do so by Lender, Borrower understands that Lender is relying on the representations contained herein and agrees

